JUDGE PETERS
delivered the oíinion oe the court:
This appeal is prosecuted to reverse a judgment in favor of appellees, in an action brought by appellant against them, for the recovery of one thousand eight hundred and eighty d.Hars and fifty cents, stolen from their safe, while he was their guest in their public inn, called the Shelby House, in the city of Louisville, wdiich loss appellant charges resulted from their culpable negligence.
*512 The defense mainly relied upon is, that -when appellant proposed to deposit his package in the safe of appellees, he was informed by one of them and their clerk that valuable packages would not be secure in their safe, that it had been robbed a few weeks before, and they would not be responsible for any package or thing of value put in said safe; and if appellant’s package was put in their safe, it would be there at his own risk. ’
From the evidence of Spencer, who was clerk in the house, it appears that in November, 1807, appellant stopped at the Shelby House, in Louisville, kept by appellees; that he offered to the witness a package, which he said contained' money, and asked him to put it in the safe; that he told appellant that Mr. Birch had the key of the safe, and had gone to bed, and also told him he had as well take his money to his room with him; it would be as secure there as in the safe, for it had been recently broken open and robbed. He then went to his room, taking his money with him, and about breakfast next morning he, in. the office, handed the package to appellee, Birch, saying to him he wanted him to put it in the safe. Birch took it, and started to the room in which the safe stood, and then told him his money would not be secure in his iron sale, for it had been broken open and robbed a short time before that, and said he would not be responsible for any money put in that safe; to which appellant made no reply; and about one week after this conversation some one opened the safe by means of.a false key, and stole appellant’s money; that the morning after the money was stolen he heard Birch tell appellant that he told him, when he took his money, he would not be responsible for it if it was stolen, and he replied he knew he did, but he thought he was joking.
*513 This witness proved that he went to bed about 10 o’clock of the night the mone} was stolen; put out all the lights, and no watch was kept at the house. There were three doors to the room in which the safe was located, and a man named Heberman, the yard-master as he was called, and two hands employed about the stock-yard, usually slept in the room; that these two hands were transient, and such men as might be hired from time to time; that after the front door of the house was closed, which was usually done about 9 or 10 o’clock at night, the entrance into the house by guests and others was through the room in which the safe stood, and in which Heberman slept; that he was an employe of appellees; and if he had retired before all the guests were in, he got up and let them in as they came to the door; that witness, was employed as clerk by appellees on the 22d October, 1867; before his employment a man named Miner had been their clerk, but had been discharged about ten' days previously.
It was proved that Miner had procured a key to be made, by the key of appellee’s safe, with which it could be opened, and that after the safe was robbed he had a bill for fifty dollars on a Louisiana bank, which appellant identified as his, and that it was in the package of money which he had given to Birch to be put in his safe.
Dunn proved he was in company with appellant when he asked the clerk of the Shelby'House, on the night of their arrival, to take charge of his money; and the clerk replied that he did not have the key, and the safe had been robbed a short time before; and he could take his money to his room with him, where it would be as secure as it would be in the safe. He kept his money that night, and next morning he was present when appellant *514 handed the money to Birch, who was at the time behind the counter, and remarked : “ My safe was robbed a few nights ago. Suppose this money is lost, who will be responsible ?” Plaintiff replied : “ Don’t you keep a public house ? Of course you will be responsible.”
Other evidence was heard in the trial; but further reference to it is not necessary for the purposes of the investigation and determination of the questions before this court.
The first instruction asked by appellant was refused, and is this in substance: That defendants are responsible for the good conduct of their employes; and if the jury believe from the evidence that defendants intrusted Minor with the key of their safe while he was employed by them, and he, while so intrusted, procured another key to be made, by means of which he entered their safe and took therefroqi plaintiff’s money, then the law is for him.
It is said by Parsons on Contracts (2d vol. p. 146), public policy imposes upon an innkeeper a severe liability. The later, and, on the whole, prevailing authorities, make him an insurer of property committed to his care against every thing but the act of God, or the public enemy, or the neglect or fraud of the owner of the property. He would then be liable for a loss occasioned by his own servants, by other guests, by robbery or burglary, from outhouses, or by rioters or mobs; nor would it excuse him if he were sick, insane, or absent at the time, for he is bound to have competent servants and agents; but it is a good defense if the loss was occasioned by the negligence of the owner.
And this court, in Weisenger vs. Taylor, &c. (1 Bush, 276), said: “The common, like the civil law, but even more stringent, exacts of innkeepers, as bailees of the *515 baggage and goods of their guests, extraordinary care, and imposes on them a responsibility nearly commensurate with that of common carriers,- approximating insurance of such articles when confided expressly or impliedly to their custody and cafe; but whenever the guest assumes the custody and control of his goods in such a way as to indicate that he does not trust the innkeeper, and concedes to him no control, they are not in the implied custody of the innkeeper, and he is, .'therefore, not responsible, unless they shall be stolen by some of his own household, whose honesty and fidelity he is presumed to guarantee.
The evidence conduces strongly to the conclusion in this case that the safe was entered by means of a false key; and also, that such key had been procured by Minor while he was an employe of appellees; and that their safe had been previously entered and robbed by such a key. There is no evidence that they had procured the key to be delivered up to them, and they had not changed the lock on their safe. With these facts, and the knowledge of their existence, they took the money of appellant to keep for him. He had surrendered the custody of it to them, and they were liable, unless they took extraordinary care of it.
Instruction No. 1 is not expressed in the most felicitous and appropriate terms; but it contains, in substance, a proposition of. law applicable in some respects to the evidence adduced on the trial, and should have been given.
Instruction No. 2 asked for by appellant should also have been given; and, as instruction No. 3, given on motion of appellees, is in conflict with it, this last instruction should have been refused. Besides, by this 3d instruction, emphatic importance is given to the facts *516 proved by the witness Spencer as to the conversation which took place between appellant and Birch when the money was handed to the latter,, while, that proved by Dunn is ignored.
Wherefore, for the errors stated, the judgment is reversed, and the cause is remanded, with directions to award a new trial, and for further proceedings not inconsistent with this opinion.